IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| INLAND EMPIRE DRY WALL SUPPLY CO., a Washington corporation, | ) ) ) | No. 34022-8-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| WESTERN SURETY COMPANY (Bond No. 58717161), | ) ) ) | |
| Respondent. | ) ) | |

PENNELL, J. — Washington law allows for the recording of a bond to free up

property encumbered by a construction lien. When this happens, the bond is substituted

for the property and a lien claimant can take legal action against the bond. The question

we confront here is who must be sued when a claim is filed against a lien release bond.

The procedural statute governing lien release bonds unambiguously identifies only the

No. 34022-8-III
*Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*

bond surety as an interested party. This is consistent with general suretyship principles, which allow a claimant to seek relief directly against a surety. Because the trial court erroneously ruled that a claim against a lien release bond could not be made solely against a surety, the judgment in this matter is reversed.

## FACTS[1]

Inland Empire Dry Wall Supply Company (Inland) entered into a credit and sales agreement with Eastern Washington Drywall & Paint (EWD&P) for a construction project. EWD&P had been subcontracted by Fowler General Construction (Fowler), the project's general contractor, to provide labor and materials for the project. Over the course of the construction project, Inland purportedly supplied $124,653.05 in drywall materials to EWD&P.

Fowler provided EWD&P with funds to pay Inland, but EWD&P never paid Inland and eventually ceased working on the project. Inland ultimately initiated a lien against the project for money owed. It filed a preclaim lien notice against the owner of the project, Western States Development Corporation, as required by RCW 60.04.031. Inland then timely recorded the lien as required by RCW 60.04.091.

---

[1] While the facts material to this decision are largely not in dispute, they are construed in the light most favorable to the appellant.

2

In order to release the project from Inland's lien, Fowler obtained a release of lien bond in the amount of $186,979.57 from Western Surety Company (Western). The bond identifies Fowler as the "Principal," Western as the "Surety," and Inland as the "Obligee." Clerk's Papers at 84-85.

After the lien release bond was recorded, Inland filed an action against Western in Spokane County Superior Court to recover on its lien. Fowler was not named a party to the suit. Western answered Inland's complaint and raised several affirmative defenses, including that by failing to name and include Fowler as a necessary and indispensable party, Inland had not satisfied the statute of limitations requirements in chapter 60.04 RCW. Both parties filed motions for summary judgment.

Relying on our decision in *CalPortland Co. v. LevelOne Concrete, LLC*, 180 Wn. App. 379, 321 P.3d 1261 (2014), the trial court granted summary judgment in favor of Western. The trial court reasoned that under *CalPortland*, when legal action is taken to foreclose on a lien release bond, the statute of limitations under RCW 60.04.141 for service of the lawsuit on a property owner is replaced by an analogous statute of limitations requiring service on a bond's principal and surety. The court ruled that because Inland only named Western as a party and served it as the bond's surety, the statute of limitations was not met and Western was discharged from liability and entitled

to judgment in its favor. Inland filed a motion for reconsideration, but the motion was denied. Inland appeals.

## BACKGROUND

This case concerns chapter 60.04 RCW, also known as the "mechanics' lien" or "construction lien" statute. *See CalPortland*, 180 Wn. App. at 385-86. This statute sets forth a lien procedure to protect the financial interests of persons contributing labor, materials or equipment to a construction project. If construction costs are not paid, the statute allows a lien to be placed against the construction project property as a method for financial recovery. Given the burdens on property imposed by construction liens, the statute sets forth strict time limits. One asserting a claim of lien must bring an action to foreclose the lien within eight months of recording the claim. RCW 60.04.141. The property owner must be served with notice of the suit within 90 days. *Id*. A lien claimant who fails to comply with these time constraints loses all rights to recover on the lien. *See Bob Pearson Constr. Inc. v. First Cmty. Bank of Wash.*, 111 Wn. App. 174, 178, 43 P.3d 1261 (2002).

Apart from protecting the rights of property owners by requiring strict time compliance, the statute also sets forth a bond procedure that can be used to free up construction project property from a lien prior to resolution of claims. RCW 60.04.161.

4

Under the lien release bond statute, a variety of persons disputing the validity of a lien can obtain and record a bond, including a property owner, a contractor or a lender. *Id.* While the statute allows for flexibility with respect to who can initiate a bond, it has strict requirements for bond sureties. A surety must be authorized to issue bonds in the state and must comply with federal bonding requirements. The statute also states a bond "surety shall be discharged from liability under the bond" if "no action is commenced to recover on a lien within the time specified in RCW 60.04.141." *Id.* In other words, strict time frames for filing suit apply in the lien release bond context, not just the regular lien context.

The procedure for obtaining relief against a lien release bond under RCW 60.04.161 has been the source of considerable confusion. Relevant here, questions have arisen with respect to who the necessary parties are when a bond has been obtained to release property from a lien. Without a bond, the statute is fairly straightforward. The owner of the real property must be made a party to the suit, along with any person who, prior to commencement of the action, has a recorded interest in the property which the lien claimant seeks to have affected. RCW 60.04.141, .171. But who must be served when a bond releases a piece of property? This is the source of the parties' dispute.

5

We attempted to resolve this confusion in *CalPortland*. In that case, like this one, a general contractor recorded a lien release bond prior to the filing of suit. Unlike this case, the lien claimant served both the general contractor as lien principal and the surety company. However, the owner of the underlying real property was not sued. Initially, the trial court dismissed the lien claim, holding the real property owner was a necessary party. We reversed. As we explained, because a bond operates to release real property from being encumbered by a lien, once the bond is recorded, the real property owner is no longer an interested party. Instead, the bond replaces the property and suit is sufficient so long as it is against the bond. *CalPortland*, 180 Wn. App. at 387-88. Given this context, the property owner need not be included as a party for a claimant's case to go forward.

In *CalPortland*, we stated a real property owner is not a necessary party to a suit against a lien release bond; instead, inclusion of the bond principal and surety is "sufficient." *Id.* at 388. This statement forms the basis of Western's current position. According to Western, the foregoing statement means Inland was required to sue both Western (as the surety) and Fowler (as the bond principal) in order to proceed on its lien. We disagree. All we said in *CalPortland* was that a suit against both a bond principal and bond surety is sufficient for compliance with the lien release bond statute. The ruling did not address whether suit against both is necessary.

6

## ANALYSIS

Resolution of this case turns on statutory construction, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our "fundamental objective" in this analysis "is to ascertain and carry out the Legislature's intent." *Id.* Where a statute's meaning is plain on its face, construction aids such as legislative history are unnecessary to determine the legislature's intent. While the current statute is not a model of clarity, its terms are sufficiently plain to resolve the parties' dispute without resorting to aids of construction. *CalPortland*, 180 Wn. App. at 388.

As previously noted, we are asked to resolve the statutory question of who is a necessary party when a bond has been recorded to replace a construction lien. For initial guidance, we look to RCW 60.04.141, which sets procedures to be followed when a bond has not been filed. In this context, service of a lawsuit to enforce a lien must be made on "the owner of the subject property" within a tight statutory timeframe. RCW 60.04.141 (suit must be filed within eight months and served within ninety days). By designating the "owner of the subject property" as the entity that must be served, the construction lien statute clearly contemplates that the "owner of the subject property" is a necessary party to a lien foreclosure claim. *See Bob Pearson*, 111 Wn. App. at 178.

7

Once a lien release bond is recorded, the procedural statute shifts from RCW 60.04.141 to RCW 60.04.161. This change alters the governing legal landscape. With a bond, real property is no longer encumbered. *CalPortland*, 180 Wn. App. at 386-87; *DBM Consulting Eng'rs, Inc. v. U.S. Fid. & Guar. Co.*, 142 Wn. App. 35, 40, 170 P.3d 592 (2007). The lien release bond operates as a substitute for the property. *Id.* at 41. As a result, the parties interested in a foreclosure action are different. Unlike RCW 60.04.141, RCW 60.04.161 makes no mention of the "owner of the subject property" as an entity necessarily impacted by a suit.[2] Instead, the statute states it is the "surety" who must be included in a suit in a timely manner. RCW 60.04.161 ("if no action is commenced [within the time frame set by RCW 60.04.141], the *surety* shall be discharged from liability") (Emphasis added.) This substitution of the "surety" in RCW 60.04.161 for the "owner of the subject property," as used in RCW 60.04.141, indicates the legislature's plain intent that when a lien release bond is filed, the surety shall be substituted for the property owner as the entity that must be sued to recover on a lien. The omission of any reference to the bond principal is significant and indicates the legislature's intent that a bond principal need not be included.

---

[2] The only reference in RCW 60.04.161 to the owner of the property subject to a lien is in the context of identifying the owner as one of several entities that may dispute a lien and record a bond.

Confusion over who must be sued in this case appears to lie in the belief that, regardless of the existence of a lien release bond, suit must be filed against a property owner. Because a bond principal might be considered the lien release bond's owner, Western claims Inland was required to include Fowler in its suit. We disagree. When it comes to a bond, the term "owner" is no longer technically applicable. Under the law of suretyship, once a bond has been obtained, the applicable terms are the obligee (or claimant or creditor), the principal obligor, and the secondary obligor (or surety). *See* RESTATEMENT OF SECURITY § 82 (AM. LAW INST. 1941); RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, at IX-XI (AM. LAW INST. 1996). The parties' relationship to the bond is created by contract. There is no "owner" in this context.

The legislature appears to have understood this terminology. Nowhere in the bond in lieu of claim statute (RCW 60.04.161) is there any indication a bond lien claimant must sue an "owner." Nor does this statute incorporate the requirement of RCW 60.04.141 that service of suit be effected on an "owner." The lien release statute only incorporates the provisions of RCW 60.04.141 as to the timing of an action. It does not incorporate the requirements of RCW 60.04.141 regarding who must be sued.[3]

---

[3] If the legislature had intended RCW 60.04.141 to apply to the lien release bond context it would not have specifically limited the applicability of RCW 60.04.141 to issues of timing.

9

Contrary to the position taken by our dissenting colleague, neither RCW 60.04.141 nor RCW 60.04.171 is directly applicable in the bond context. Both RCW 60.04.141 and .171 discuss the procedures for foreclosing on a "lien" and the disposition of related "property." But once a bond is filed, property is no longer encumbered. *DBM Consulting*, 142 Wn. App. at 42 ("A lien bond releases the property from the lien, but the lien is then secured by the bond"). Only the bond is at risk. Although the subject matter of the proceeding is still the validity of the originally recorded claim of lien, *Id.* at 40, this continuity of subject matter does not control who must be made party to the suit. *See CalPortland*, 180 Wn. App. at 391.[4]

Just as it makes little sense, in the context of a bond, to require suit against an "owner," it also makes little sense to incorporate the "property" concepts discussed in RCW 60.04.141 and .171. The whole point of a bond is to release property from being tied up in litigation. Once a bond is filed, the statute operates to substitute the bond for the property. In like manner, application of the bond statute operates to substitute the bond surety for the property owner as the individual that must be sued in a timely manner.

Contrary to Western's protests, there is no practical or logical impediment to

---

[4] Given this subject matter, it is not surprising that RCW 60.04.161 refers to an action against a bond as one involving an effort to recover on a lien. We therefore disagree with the reliance placed on this portion of the statute by our dissenting colleague.

10

pursuing a bond claim against only the surety. General suretyship principles apply. Under those principles, a bond lien claimant such as Inland "has two sets of rights, one set against the principal obligor and the other against the secondary obligor," also known as the surety. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 50 cmt. a. The failure of the claimant to take action against the principal "does not discharge the [surety]" unless provided by statute or other authority. *Id*. at § 50(1). This rule works no injustice to the surety because, to the extent the surety requires the principal's assistance, the surety "may seek enforcement of the principal obligor's duty of performance." *Id*. at cmt. a. Accordingly, "even if the [claimant] has not sought enforcement of the underlying obligation, the [claimant's] inaction generally affords no equitable basis for a claim of discharge by the [surety]." *Id. See also Hutnick v. U.S. Fid. and Guar. Co.*, 47 Cal. 3d 456, 468-69, 763 P.2d 1326, 253 Cal. Rptr. 236 (1988) (service on surety sufficient to allow claim against mechanic's lien bond). *See also Warren v. Washington Trust Bank*, 92 Wn.2d 381, 390 n.1, 598 P.2d 701 (1979) ("it is the general rule that, even though the creditor has a security interest in property of the principal, he may proceed first against the surety before resorting to the security interest").

The general suretyship principle that a claimant may seek relief only against a surety is fully consistent with Washington law. This is true under the lien release bond

11

statute, which only contemplates suit against the surety. RCW 60.04.161. It is also true under generally applicable surety law, chapter 19.72 RCW. In fact, RCW 19.72.090 recognizes suits will sometimes be laid directly against sureties. The only caveat is that in such circumstances, the principal must sometimes be allowed to intervene as a defendant.

By the plain terms of RCW 60.04.161, Inland was only required to name Western, as the bond surety, as a defendant to its bond foreclosure action. While Inland could have also named Fowler, as the bond principal, it was not required to do so. Inclusion of Fowler may have streamlined the case and would have obviated the need for this appeal, but it was not a statutory prerequisite. Because Inland satisfied the statute of limitations for inclusion of a necessary party under RCW 60.04.161, the trial court's judgment in favor of Western is reversed.

## ATTORNEY FEES

Both parties request an award of attorney fees and costs pursuant to RCW 60.04.181(3). Because this matter is remanded for further proceedings, an award at this juncture is premature. On remand, the trial court may award to Inland reasonable attorney fees and expenses incurred in the trial and appellate courts if the trial court determines Inland to be the prevailing party. RAP 18.1(i). We decline to make an award of costs pursuant to RAP Title 14.

No. 34022-8-III
*Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*

## CONCLUSION

Based on the foregoing, we reverse and remand for proceedings not inconsistent with this opinion.

Pennell, J.

I CONCUR:

Siddoway, J.

13

No. 34022-8-III

FEARING, C.J. (dissenting) — This appeal asks two questions. First, must the principal or purchaser of a construction lien release bond, under RCW 60.04.161, be joined and served as a party when a claimant against the bond sues to recover on the bond? Second, is the principal or purchaser of the construction lien release bond, under RCW 60.04.161, an indispensable or necessary party in a lawsuit brought by a bond claimant? Despite answering the first question in the negative, the majority addresses only the first question. I answer the first question in the positive and thus dissent. Language in chapter 60.04 RCW and the nature and purpose of the lien release bond demand joinder of the bond's principal in that the bond claimant must still adjudicate his construction lien in the action against the bond. Joinder of the bond principal also avoids duplicitous litigation. I need not answer the second question, but my answer to the first question subsumes an answer that the bond principal is a necessary party to an action on the lien release bond.

## FACTS

On October 15, 2012, Inland Empire Dry Wall Supply, Co. (Inland Empire) and

Eastern Washington Drywall & Paint, LLC (Drywall & Paint) entered a contract, under which Inland Empire agreed to sell building supplies on open account to Drywall & Paint, a construction subcontractor. Pursuant to the contract and beginning in April 2014, Inland Empire began supplying to Drywall & Paint construction supplies for the building project, Bella Vista Apartments in Richland. Western States Development Corporation (Western States) owned the apartment project, and the owner hired Fowler General Construction (Fowler) as general contractor. Fowler, in turn, hired Drywall & Paint to install the drywall on the project.

During the course of the project, Drywall & Paint purchased $124,653.05 worth of drywall materials from Inland Empire. According to Inland Empire, Drywall & Paint paid nothing for the purchases. According to Fowler, Inland Empire collected some payment since Fowler refused to release some payments to Drywall & Paint without Inland Empire receiving the payments. Fowler insists that Inland Empire has failed to properly account for payments from Drywall & Paint.

On April 16, 2014, Inland Empire served a preclaim notice to Western States and Fowler. On September 26, 2014, Inland Empire recorded a claim of lien with the Benton County auditor's office on the apartment project realty. On November 17, 2014, Fowler purchased and recorded a release of lien bond from Western Surety Company (Western Surety) with the Benton County auditor's office in the amount of $186,979.57 to release the construction lien on the apartment real property. The bond names Fowler as the

2

principal. The bond reads as always in awkward language:

> RELEASE OF LIEN BOND
> KNOW ALL MEN BY THESE PRESENTS, That *Fowler General Construction, Inc., as Principal and Western Surety Company, as Surety, are held and firmly* unto Inland Empire Drywall Co., as Obligee, in the amount of One Hundred Eighty Six Thousand Nine Hundred Seventy Nine & 57/100 (186,979.57) DOLLARS, AND, WHEREAS, Inland Empire Drywall Co. on September 26, 2014, filed a Lien Number 2014-024259 against the property known as Bella Vista Apartments Phase II and owned by Western States Development Corporation, AND, WHEREAS, Fowler General Construction, Inc. does not wish to pay said lien until the validity of the lien can be properly determined or adjudicated.
> NOW, THEREFORE, if the said *Principal and Surety* shall hold harmless the said Obligee from and against any loss, costs or expenses which may accrue due to the filing of said lien, then this obligation to be null and void, otherwise to remain in full force and effect.

Clerk's Papers (CP) at 23 (emphasis added). Both Fowler and Western Surety signed the bond.

Before Inland Empire filed suit, it demanded direct payment of the lien from Western Surety. An agent of Western Surety replied:

> The referenced bond states that Fowler does not wish to pay the lien until the validity of the lien can be properly determined or adjudicated. RCW 60.04.161 states that the condition of the bond shall be to guarantee payment of any judgment upon the lien. Thus, if judgment is entered against Fowler, and Fowler does not satisfy the judgment, then demand can be made against the Release of Lien Bond. It does not appear that a lawsuit has been filed nor a judgment entered against Fowler. At this time, Western surety is not obligated to satisfy your demand for payment to Inland Empire Drywall & Supply.

CP at 82.

3

Western Surety's counsel represents Fowler in a separate action brought by Fowler against Drywall & Paint.

## PROCEDURE

Inland Empire filed this lawsuit to recover against or foreclose on the lien release bond. Inland Empire only named Western Surety as a defendant. The trial court dismissed this suit because of Inland Empire's failure to join and serve Fowler as a defendant. Contrary to the majority, I would affirm.

## LAW AND ANALYSIS

This appeal requires comparing and contrasting three related construction lien statutes found in chapter 60.04 RCW. Chapter 60.04 RCW creates a construction lien, formerly known as a mechanic's or materialman's lien, which binds real estate improved by construction in favor of one who furnishes labor, professional services, equipment, or material for the improvement. RCW 60.04.021. Our first crucial statute is RCW 60.04.141, which establishes a statute of limitations for foreclosing on the lien and demands service of process on the property owner. The statute reads in relevant part:

> **Lien—Duration—Procedural limitations.**
> No lien created by this chapter binds the property subject to the lien for a longer period than eight calendar months after the claim of lien has been recorded unless an action is filed by the lien claimant within that time in the superior court in the county where the subject property is located to enforce the lien, *and service is made upon the owner of the subject property* within ninety days of the date of filing the action.

4

(Emphasis added.) We must decide if the service proviso of RCW 60.04.141 still controls after a lien release bond replaces the real property as security, and, if so, who becomes the owner of the property.

Our next critical statute is RCW 60.04.161, which permits the owner of the real estate encumbered by the lien or a contractor on the construction project to post a bond in order to release the lien on the real property. The statute reads in pertinent part:

> **Bond in lieu of claim.**
> Any owner of real property subject to a recorded claim of lien under this chapter, or contractor, subcontractor, lender, or lien claimant who disputes the correctness or validity of the claim of lien may record, either before or after the commencement of an action to enforce the lien, in the office of the county recorder or auditor in the county where the claim of lien was recorded, a bond issued by a surety company . . . equal to or greater than the amount of the bond to be recorded. The bond shall contain a description of the claim of lien and real property involved, and be in an amount equal to the greater of five thousand dollars or two times the amount of the lien claimed if it is ten thousand dollars or less, and in an amount equal to or greater than one and one-half times the amount of the lien if it is in excess of ten thousand dollars. . . . *The condition of the bond shall be to guarantee payment of any judgment upon the lien in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien. The effect of recording a bond shall be to release the real property described in the notice of claim of lien from the lien and any action brought to recover the amount claimed. Unless otherwise prohibited by law, if no action is commenced to recover on a lien within the time specified in RCW 60.04.141, the surety shall be discharged from liability under the bond.* If an action is timely commenced, then on payment of any judgment entered in the action or on payment of the full amount of the bond to the holder of the judgment, whichever is less, the surety shall be discharged from liability under the bond.

(Emphasis added.)

5

Our final decisive statute is RCW 60.04.171, which discusses the lien foreclosure

suit. The first paragraph of the statute declares:

> **Foreclosure—Parties.**
> *The lien provided by this chapter*, for which claims of lien have been recorded, may be foreclosed and enforced by a civil action in the court having jurisdiction in the manner prescribed for the judicial foreclosure of a mortgage. The court shall have the power to order the sale of the property. *In any action brought to foreclose a lien, the owner shall be joined as a party*. The interest in the real property of any person who, prior to the commencement of the action, has a recorded interest in the property, or any part thereof, shall not be foreclosed or affected unless they are joined as a party.

(Emphasis added.) We must decide, in part, whether RCW 60.04.171 covers an action to

foreclose or realize on the lien release bond, and, if so, who is the owner.

We are always to construe a statute in order to apply the intent of the Washington

Legislature. *Department of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43

P.3d 4 (2002). We are also to read a statute together with related statutes in an attempt to

discern the wish of the legislature. This court construes the meaning of a statute by

reading it in its entirety and considering its relation with other statutes. *Department of*

*Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d at 11. Statutes relating to the same

subject matter are to be read together as constituting a unified whole, to the end that a

harmonious, total statutory scheme evolves which maintains the integrity of the

respective statutes. *State v. Haggin*, 195 Wn. App. 315, 319, 381 P.3d 137 (2016).

The majority writes that the only statute controlling a suit to recover on the lien

6

release bond is RCW 60.04.161. I disagree. This statement disregards the connection between the lien release bond and the original construction lien and violates the principle that we construe as one related statutes. The majority also writes that RCW 60.04.161 reads that the surety must be included in the suit in a timely manner and implies that only the surety must be sued. I find no language in the statute about serving or joining the surety in the lawsuit, let alone stating that the surety is the only party to be served or joined.

In this instance, we should fastidiously peruse the three statutes to discern the will of the legislature with regard to whether the principal of the lien release bond must be joined and served as a party when the bond's obligee forecloses. The statutes are not models of clarity. But after reading the statutes together, recognizing the purpose behind the statutes, and reviewing case law, the answer arises that the bond principal must be joined in the lawsuit.

The majority emphasizes a phrase near the end of RCW 60.04.161, the statute that creates the lien release bond. The phrase declares: ". . . if no action is commenced to recover on a lien within the time specified in RCW 60.04.141, the surety shall be discharged from liability under the bond." According to the majority, the language suggests that only the surety, and not the bond's principal, need be joined in the lawsuit to foreclose on the lien release bond. But the majority stretches the language beyond its elasticity. The language says nothing about the parties to invite to the suit. The phrase

7

does not state that only the surety must be sued or that conversely the principal need not be joined in the suit.

The three statutes refer to only one suit, a suit to foreclose on a lien. RCW 60.04.161 states that, even after the posting of the bond, the claimant proceeds with an action to foreclose on a lien. RCW 60.04.171 demands that the claimant join the "owner" in an action to foreclose a lien. The three statutes only describe one procedure regardless of whether the bond has replaced the land as security for payment.

Note that the phrase emphasized by the majority does not mention filing a suit to collect on the bond, but rather a suit to foreclose on the lien. To repeat, the statute reads: ". . . if no action is commenced to *recover on a lien* within the time specified in RCW 60.04.141, the surety shall be discharged from liability under the bond." RCW 60.04.161 (emphasis added). This language confirms that the rules relating to foreclosing a lien under RCW 60.04.141 and .171 control a suit against the bond, regardless of whether we employ the terminology "action to foreclose the lien on the bond" or "action to recover on the bond."

RCW 60.04.161 uses the indefinite article "a" when referring to foreclosure of a lien release bond. To repeat a second time, the statute reads, in an important section: ". . . if no action is commenced to recover on *a* lien within the time specified in RCW 60.04.141, the surety shall be discharged from liability under the bond." (Emphasis added.) Use of the indefinite article further shows that the same procedure for

8

foreclosing on the construction lien encumbering land operates when foreclosing on the lien release bond. To keep the surety liable on the bond, the claimant must file an action to recover on a lien or the lien.

One sentence in RCW 60.04.161 declares: "The condition of the bond shall be to guarantee payment *of any judgment upon the lien* in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien." This sentence assumes that, despite the posting of the bond, the claimant continues with a foreclosure of lien action. Thus, recovery against the bond demands foreclosing the lien and utilizing the lien foreclosure process. One of the conditions of the lien foreclosure is that the owner of the property be served and joined.

A sentence in the succeeding statute, RCW 60.04.171 demands: "In any action brought to foreclose *a* lien, the owner shall be joined as a party." (Emphasis added.) Note that the legislature employed the indefinite article again. This language suggests that the owner, in addition to the surety, must be joined as a party in a lien release bond foreclosure. Under such a reading, we need to identify the "owner" in the bond foreclosure.

I also note that chapter 60.04 RCW does not present an alternate procedure for foreclosing on a lien release bond instead of foreclosing on land encumbered by the construction lien. Since the legislature did not provide for an alternate procedure and since we must construe the statutory scheme as a whole, I conclude that the language of

9

RCW 60.04.141 and .171 requiring service on the "owner" extends to a suit on the lien release bond.

Inland Empire argues that we must construe the construction lien statutes liberally and thereby rule in its favor. RCW 60.04.900 states:

> RCW 19.27.095, 60.04.230, and 60.04.011 through 60.04.226 and 60.04.261 are to be liberally construed to provide security for all parties intended to be protected by their provisions.

Case law provides flesh for RCW 60.04.900 and ascertains when courts will employ a liberal construction of the statutes. Under Washington decisions, statutes creating liens are in derogation of the common law and are to receive a strict construction. *Tsutakawa v. Kumamoto*, 53 Wash. 231, 236, 101 P. 869, 102 P. 766 (1909). Their operation will not be extended for the benefit of those who do not clearly come within the terms of the act. *Williams v. Athletic Field, Inc.*, 172 Wn.2d 683, 695, 261 P.3d 109 (2011). RCW 60.04.900 means that, when the court determines that persons come within the operation of the act, the statutes will be liberally applied to them. *Williams v. Athletic Field, Inc.*, 172 Wn.2d at 695.

The rule of liberal construction applies in favor of Inland Empire and almost persuades me to join the majority. Still we cannot use the liberal construction requirement to support a strained or unrealistic interpretation of statutory language. *Senate Republican Campaign Committee v. Public Disclosure Commission*, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997). I have already read the statutes to the contrary. This

reading demands that the bond claimant follow the procedures needed to foreclose on the construction lien. The nature of the lien release bond as later discussed in other decisions confirms this reading.

The majority asserts that the prevailing view in America is that the principal need not be joined as a party when the obligee sues the surety. The majority cites *Restatement (Third) of Suretyship & Guaranty* § 50 (1996) for the prevailing rule. The majority may be correct as to this prevailing view. Nevertheless, I question the view's relevance when we must review a statutory scheme that substitutes a lien release bond for a construction lien on real property.

74 Am. Jur. 2d *Suretyship* § 102 (2016) reads, in part:

> A surety may in all cases be sued jointly with the principal. If the obligation is joint and not several, all the obligors must be joined as parties defendant. However, if the obligation is joint and several, the creditor has the right to proceed against the surety alone, or if the creditor chooses, it may sue the principal, and at the same time bring an action also against the surety, and prosecute both suits concurrently until the creditor obtains satisfaction from one of them.

(Footnotes omitted).

Both Fowler and Western Surety, respectively as principal and surety, bound themselves to Inland Empire. Both principal and surety agreed to hold Inland Empire harmless from any release of the lien on the real property. Both Fowler and Western Surety signed the bond. Nevertheless, the bond does not read that the parties suffer joint and several liability.

11

Even assuming joint and several liability of Fowler and Western Surety, cases conflict with 74 Am. Jur. 2d *Suretyship* § 102. The only case cited by Am. Jur. 2d for the proposition that the creditor may join only the surety is *Morgen & Oswood Construction Co. v. United States Fidelity & Guaranty Co.*, 167 Mont. 64, 535 P.2d 170 (1975), wherein the bond specifically read that the principal and surety undergo joint and several liability. A series of Texas cases hold that, when the surety bond provides for joint and several liability of the surety and principal, the principal is a necessary party to suit on the bond. *Great American Insurance Company v. Sharpstown State Bank*, 422 S.W.2d 787 (Tex. Civ. App. 1967); *Iley v. Tapick*, 368 S.W.2d 809 (Tex Civ. App. 1963). In *Smith v. Rogers*, 34 S.W.2d 312 (Tex. Civ. App. 1930), the court considered a principal on a sheriff's bond to be a necessary party.

*Hutnick v. U.S. Fidelity & Guaranty Co.*, 47 Cal. 3d 456, 763 P.2d 1326, 253 Cal. Rptr. 236 (1988) supports the majority's decision. A landscaper recorded a mechanic's lien against property on which it had performed services. After the landscaper filed suit to foreclose on the lien, a purchaser of the land posted a lien release bond from U.S. Fidelity & Guaranty. Eight months after posting the bond, the landscaper served the lawsuit papers on the bonding surety. Shortly thereafter the landscaper filed an amended complaint to add a cause of action for foreclosure on the bond. A California statute read: "Any action on the lien release bond shall be commenced by the claimant within six months of the recording of the lien release bond." CAL. CIV. CODE § 3144.5. The surety

12

sought to dismiss the claim against it because the landscaper failed to sue on the bond within six months of the bond's recording and because the landscaper failed to serve the lawsuit on the land purchaser, who was also the principal on the surety bond. The California court rejected the surety's arguments.

The *Huntnik* court identified the purpose behind the lien release bond and its operation. The bond provides a means by which, before a final determination of the lien claimant's rights and without prejudice to those rights, the property may be freed of the lien, so that it may be sold, developed, or used as security for a loan. The recording of the lien release bond does not extinguish the lien. Rather the bond replaces the land as the object to which the lien attaches. The recordation of the bond in effect transfers the claim of lien from the owner's land to the bond. The court adopted the reasoning of other courts when writing:

> [A] cause of action to foreclose a mechanic's lien is substantially the same whether relief is sought against the liened property or against a bond which has been substituted for the property. Thus it has been said that the bond "does not change the relation or rights of the parties otherwise than in substituting its obligations for the [property] subject to the lien, and it was not within the legislative purpose in permitting the substitution to deteriorate the lienor's rights."

47 Cal. 3d at 463 (quoting *Harley v. Plant*, 210 N.Y. 405, 410, 104 N.E. 946 (1914)). The court reasoned that the landscaper's amendment to foreclose on the bond rather than the real property did not commence a new cause of action. Therefore, the landscaper had commenced the claim against the surety timely. The same reasoning supports a

13

conclusion that the bond claimant must follow the procedural rules of the construction lien foreclosure statutes, including the Washington statutory provisions of joining the owner of the property.

The *Hutnick* court later addressed what parties the lien claimant should join to a foreclosure of the lien release bond. The court cited previous California case law when writing:

> "The defendants on the bond cause of action are the principal and the sureties." This is so because when the release bond is recorded, the bond obligations of *both* principal and surety are substituted for the property as the object to which the mechanic's lien attaches.

47 Cal. 3d at 469 (quoting CAL. CONTINUING EDUC. OF BAR, CALIFORNIA MECHANICS' LIENS AND OTHER REMEDIES § 2.61, at 111 (2d ed. 1988)). Despite identifying the bond principal as a defendant in the bond action, the California high court ruled that the landscaper need not have served the principal with the summons and complaint in order to proceed against the surety. The court declared:

> Still to be addressed is the more general question raised by the Court of Appeal regarding the surety's liability when the lien claimant has not served the release bond principal as a defendant in the foreclosure action. The present case directly raises this problem because although plaintiffs have named Anderson, the new owner of the property and the principal on the bond, as a defendant in this action, Anderson has not been served and has not appeared.
>
> We may assume arguendo that a judgment on a lien release bond would not be directly enforceable against a principal who had not been served and had not appeared in the action. This does not mean, however, that the surety will be compelled to defend the action alone and unassisted by the principal. If only the surety is joined, the resulting judgment will be

14

binding on the principal, provided only that the surety has given notice to the principal "and an opportunity at the surety's request to join in the defense." (Code Civ. Proc., § 1912.) A principal notified of the action by the surety will have the same motivation to defend the action as if formally named as a party, because the judgment will be equally conclusive as a determination of the principal's liability. Consequently, the surety has the means to call upon the principal to defend the lien foreclosure action.

47 Cal. 3d at 469 (citations omitted).

*Hutnick* can be distinguished. The California statute, unlike the Washington statute, specifically mentioned "any action on the lien release bond." 47 Cal. 3d at 464. Washington also does not have a statute by which the principal is bound by a judgment against the surety if the surety gives the principal notice of the suit. The *Hutnick* decision mentions no California statutes requiring the owner of property to be joined in the suit.

Three Washington decisions provide help in answering the first question on appeal in favor of demanding service on the bond principal. All three support the proposition that an action on the lien release bond is tantamount to foreclose on the construction lien.

In *DBM Consulting Engineers, Inc. v. United States Fidelity & Guaranty Co.*, 142 Wn. App. 35, 170 P.3d 592 (2007), DBM Consulting Engineers recorded a lien against the owner of real estate to secure a debt DBM asserted it was owed under a contract. The owner obtained a lien bond to allow it to sell the property. DBM sued the owner for breach of contract and to foreclose the lien and prevailed at trial on the contract claim. DBM did not seek a judgment on its foreclosure claim. DBM then sued the bond surety to compel it to pay DBM the amount of the bond. This court held that, because DBM

15

failed to obtain a judgment on the lien in its first suit and only obtained a judgment on the breach of contract claim, the surety was not obligated to pay on the lien bond.

In *DBM Consulting Engineers*, this court interpreted the language of RCW 60.04.161, the lien bond statute. I have already discussed the relevant sentence in the statute, which states: "The condition of the bond shall be to guarantee payment of any judgment upon the lien in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien." 142 Wn. App. at 39 (quoting RCW 60.04.161) (emphasis omitted). This court agreed with the surety that the sentence declares that the bond only guarantees payment of a judgment on the lien. When the lien claimant forecloses on the lien, the judgment is paid from the bond. The purpose of such a bond is to transfer the lien from the property to the bond to permit alienation of the property. The bond is not a concession that the lien is valid and correct. Thus, the claimant must still adjudicate the validity of the lien. Since DBM failed to adjudicate its lien in the first lawsuit, res judicata barred the second lawsuit. Failure to adjudicate the lien was fatal to the claim against the surety.

*Olson Engineering, Inc. v. KeyBank National Association*, 171 Wn. App. 57, 286 P.3d 390 (2012) also supports the conclusion that the construction lien foreclosure statutes control suits on the lien release bond since the bond claimant must still prove the validity of its lien. If the action on the bond is tantamount to foreclosure of the

16

construction lien, the bond claimant must follow the procedural requirements of the lien foreclosure statutes, including the requirement that the owner be joined.

The third important Washington decision is this court's newly minted decision in *CalPortland Co. v. LevelOne Concrete, LLC*, 180 Wn. App. 379, 321 P.3d 1261 (2014). CalPortland answers the question of who is the "owner of the property" when the bond replaces the real property lien.

CalPortland provided building materials to LevelOne Concrete, a subcontractor working on the construction of a new Costco building for which Ferguson Construction served as general contractor. LevelOne Concrete failed to pay for the materials, and CalPortland recorded a lien against the real property. Before any lawsuit, Ferguson Construction posted a lien release bond issued by Travelers Casualty and Surety. The trial court dismissed CalPortland's suit on the bond because CalPortland failed to join Costco as a defendant. The surety relied on RCW 60.04.141, which requires the lien claimant to serve the suit on the owner of the property. This court reversed since Costco need not have been served with process after Ferguson Construction substituted the lien release bond for the construction lien on the real property. Costco was no longer the "owner" of the relevant property.

This court in *CalPortland* noted the purpose and operation of the lien release bond. RCW 60.04.161 allows a party to file a bond to free the real property for conveyance by transferring the lien to the bond. Filing the bond does not destroy the lien

17

entirely, but instead transfers the lien from the real property to the bond. The lien bond releases the property from the lien, but the lien is then secured by the bond. The plain language of the statute established that Costco's realty was no longer "property subject to the lien" for purposes of RCW 60.04.141's procedural requirement.

*CalPortland* does not involve our situation on appeal of the lien claimant failing to serve the principal under the lien release bond. Some dicta, however, could be read to demand that the principal of the bond be served. This court wrote:

> The bond did not name Costco as a principal or surety. Thus, when CalPortland filed suit, Costco did not have an ownership interest in any property "subject" to the lien within the meaning of RCW 60.04.141. In fact, the plain terms of the statute rendered Costco's property immune from "any action brought to recover the amount claimed" by CalPortland. RCW 60.04.161. CalPortland, therefore, had no duty to serve Costco with the summons and complaint. The only parties with an interest in the bond were Ferguson and Travelers: the principal and surety named in the security. Thus, the trial court erred in relying on CalPortland's failure to serve Costco in granting summary judgment to Ferguson.

*CalPortland Co. v. LevelOne Concrete LLC*, 180 Wn. App. at 388. As a party with an interest in the bond, the bond's principal should be identified as its owner. *CalPortland*'s dictum thereby supports the conclusion that the principal of the surety is the owner who must be served in the lien release bond foreclosure action.

Foreign decisions also support my conclusion that the principal of the lien release bond should be joined and served as a party in the action to recover on the bond. A closely aligned decision is *Synchronized Construction Services, Inc. v. Prav Lodging,*

18

*LLC*, 288 Va. 356, 764 S.E.2d 61 (2014). The Virginia high court addressed the commonwealth's version of a lien release bond statute. The court noted that the bond replaces the real property as the subject of the foreclosure, and, in turn, parties with an interest in the bond, including the principal, are necessary parties to the foreclosure. The court wrote:

> Certain "parties in interest" may, in accordance with the rules set forth by the General Assembly, post a bond after a mechanic's lien enforcement action has been filed. A properly posted bond releases the real estate from the mechanic's lien enforcement action. We have previously recognized that this bonding-off process only "substitutes the bond for the real estate" that had been subject to the mechanic's lien. Because the real estate is no longer subject to the mechanic's lien enforcement action once a bond is properly posted, the "subject matter" or res of the suit is no longer the real estate, but is instead the posted bond itself.
>
> This has a logical impact on the necessary party analysis. If no bond has been posted the inquiry turns upon which parties have a *real property interest in the real estate* subject to the mechanic's lien, but when a bond is posted the inquiry focuses upon which parties have a *pecuniary interest in the bond itself* which is "likely either to be defeated or diminished" by the plaintiff's "claim against the bond."
>
> To this end, we have previously considered which parties constitute "necessary parties-defendant to [a] bond enforcement suit." The principal on the bond and the surety on the bond are necessary parties. However, the owner of real estate, the trustee under the deed of trust, and the beneficiary of the deed of trust are no longer necessary parties when their only relation to the litigation is their respective real property interests in the real estate that had been subject to the mechanic's lien, but that was no longer encumbered once the bond had been posted in accordance with Code § 43-70.

764 S.E.2d at 66 (citations omitted) (alteration in original).

In a 4 to 3 decision, the *Synchronized Construction Services* court held that the

general contractor, who had no pecuniary interest in the bond posted to release the real property lien, was not a necessary party to the foreclosure on the bond. The general contractor did not pay for the bond. A lender and the property owner purchased the bond. The three dissenters considered the general contractor to also be a necessary party to the suit since the bond needed to pay only if the subcontractor, who filed the lien, was obligated to pay the general contractor. The general contractor should have the opportunity to assert any claims or defenses it might have against payment to the subcontractor. The general contractor should have the opportunity to protect itself against claims of the subcontractor.

Another Virginia decision is illustrative. In *Johnson Controls, Inc. v. Norair Engineering Corp.*, 86 Va. Cir. 138 (2013), the court held that, when a lien release bond replaces a mechanic's lien, the owners of the real property are no longer necessary parties. Instead, the bond principal and surety are necessary parties. The court dismissed the suit. Although the bond principal was named a party in other causes of action within the same lawsuit, the bond claimant failed to name the principal as a defendant in the cause of action seeking to foreclose on the bond.

*George W. Kane, Inc. v. NuScope, Inc.*, 243 Va. 503, 416 S.E.2d 701 (1992), teaches of the need to join the principal in the bond foreclosure action. In order to recover against the bond, the claimant must prove a valid lien and the amount of the lien. Therefore, the same parties as required to enforce the lien should be present in the bond

20

recovery action. The principal of the bond, who is often the general contractor or the hirer of the claimant, has an interest in the outcome of the suit. The principal generally has information critical to the resolution of the dispute.

A series of New York cases also supports the conclusion that the principal of the lien release bond must be joined in a suit to recover on the bond. Under New York law, all persons should be made parties defendant, in the bond suit, who would be proper parties to an action for the foreclosure of the lien in case a bond had not be given. *Henry Quentzel Plumbing Supply Co. v. 60 Pineapple Residence Corp.*, 126 Misc. 2d 751, 483 N.Y.S.2d 927 (1984); *Von Den Driesch v. Rohrig*, 45 A.D. 526, 61 N.Y.S. 341 (1899); *Genninger v. Frank A. Wahlig Co.*, 116 N.Y.S. 578 (N.Y.C. City Ct. 1909); *Morton v. Tucker*, 145 N.Y. 244, 40 N.E. 3 (1895); *Sheffield v. Robinson*, 80 N.Y. Sup. Ct. (73 Hun) 173, 25 N.Y.S. 1098 (1893). The New York and Virginia cases may conflict with the ruling in *CalPortland Co. v. LevelOne Concrete, LLC*, 180 Wn. App. 379 (2014) in that, in Washington, the owner of the improved real property need not be joined in the bond foreclosure suit. Nevertheless, the foreign cases illustrate the need to at least require the bond principal to be joined as a party.

Joining the bond principal in the bond recovery suit serves another purpose. The principal must reimburse the surety for any money paid by the surety. *First Interstate Bank of Washington, N.A. v. Nelco Enterprises, Inc.*, 64 Wn. App. 158, 162-63, 822 P.2d 1260 (1992); *Leuning v. Hill*, 79 Wn.2d 396, 400-01, 486 P.2d 87 (1971); *Eder v. Nelson,*

21

41 Wn.2d 58, 62, 247 P.2d 230 (1952). Typically an indemnity agreement between the principal and surety confirms this common law rule. Fairness then asks that the principal be able to litigate the validity of the lien. I assume that the surety will often notify the principal of the suit, but I cannot be assured that notification will always occur. Demanding that the bond claimant join the bond principal imposes minimal burden on the claimant compared to the harm that could result without the presence of the principal in the lawsuit.

Inland Empire observes that counsel representing Western Surety in this appeal and at the trial court level in this suit also represents Fowler in a lawsuit brought against Drywall & Paint. I do not find this observation controlling on the outcome of the appeal. No case stands for the proposition that a party need not be served and joined in a suit if that party's counsel in another lawsuit represents another party in the pending suit. In other lien release bond cases, the surety's attorney may not represent the bond's principal in another suit.

Fearing, J.

_____
Fearing, C.J.