[No. 58767-6-I. Division One. October 29, 2007.]

DBM CONSULTING ENGINEERS, INC., *Respondent*, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant*.

36

*William A. Linton* (of *Inslee, Best, Doezie & Ryder PS*), for appellant.

*Arthur H. McKean* (of *Aiken St. Louis & Siljeg PS*), for respondent.

¶1 COLEMAN, J. — When an owner of property subject to a lien records a lien bond, the bond becomes security for the lien and guarantees payment of a judgment upon the lien. In this case, DBM Consulting Engineers recorded a lien against a client to secure a debt DBM asserted it was owed under a contract. The client obtained a lien bond to allow it to sell the property. DBM sued the client for breach of contract and prevailed at trial. DBM then sued the bond surety to compel it to pay DBM the amount of the bond, and the trial court granted DBM's motion for summary judgment. But because DBM failed to obtain a judgment upon the lien, only obtaining a judgment on the breach of contract claim, the surety was not obligated to pay on the lien bond. Accordingly, we reverse and dismiss.

*FACTS*

¶2 Joseph Sanders hired DBM to provide engineering consulting services to the company he owned and managed, Soos Creek Vista, which owned property in King County. DBM claimed that it was owed money under this contract and filed a mechanics' lien for $62,836.89 against the Soos Creek property. A few weeks later, DBM filed a complaint against Soos Creek[1] for breach of contract, unjust enrichment, and foreclosure of the mechanics' lien.

¶3 Shortly thereafter, Sanders recorded a "bond in lieu of claim" in the amount of $94,255. The surety for this bond was United States Fidelity and Guaranty Company, and

---

[1] DBM made claims against Soos Creek and Sanders and his marital community, but the defendants in the Soos Creek litigation are referred to collectively as "Soos Creek" in this opinion.

the successor in interest to this company is St. Paul/ Travelers Insurance Company (Travelers). Soos Creek proceeded to sell parcels of its property. DBM's lawsuit went to a jury trial, and the jury found that Soos Creek had breached its contract with DBM and that the amount of damage caused by that breach was $38,070.22. DBM did not ask the court to enter judgment as to the unjust enrichment or lien foreclosure claims. In addition to the contract damages amount, the trial court awarded DBM $85,000.00 in attorney fees under a contract provision and $10,955.00 in prejudgment interest.

¶4 After this judgment was entered and Soos Creek failed to pay, DBM demanded that Travelers pay the full amount of the bond to partially satisfy the judgment. Travelers refused to do so, contending that the judgment did not foreclose on DBM's lien and that foreclosure of the lien was required to entitle DBM to the bond amount. DBM then sued Travelers for payment on the bond. The trial court entered summary judgment against Travelers in the amount of the bond, plus $27,882 in prejudgment interest and $16,175 in attorney fees. Travelers timely appealed.

## ANALYSIS

### Condition of the Lien Bond

¶5 Travelers contends that because DBM obtained a judgment only on the breach of contract claim but did not actually litigate the validity of the lien, Travelers is not obligated to pay on the bond. DBM requested foreclosure of the lien in the complaint but never pursued the claim or obtained a ruling on it. DBM argues that because Travelers had posted a bond in lieu of claim, the Soos Creek property was released from the lien—so there was no lien upon which DBM could have foreclosed, and the judgment it obtained on the professional services contract entitles it to payment on the bond.

¶6 This dispute over which events trigger the obligation of the bond depends on the interpretation of

RCW 60.04.161, the lien bond statute. The interpretation of this statute is an issue of first impression. The statute reads:

> Any owner of real property subject to a recorded claim of lien under this chapter . . . who disputes the correctness or validity of the claim of lien may record, either before or after the commencement of an action to enforce the lien . . . a bond issued by a surety company authorized to issue surety bonds in the state. . . . *The condition of the bond shall be to guarantee payment of any judgment upon the lien in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien.* The effect of recording a bond shall be to release the real property described in the notice of claim of lien from the lien and any action brought to recover the amount claimed. . . . If an action is timely commenced, then on payment of any judgment entered in the action or on payment of the full amount of the bond to the holder of the judgment, whichever is less, the surety shall be discharged from liability under the bond.

RCW 60.04.161 (emphasis added). Travelers contends that the italicized sentence clearly states that the bond guarantees payment of a judgment only *upon the lien* and asserts that both types of actions listed in this sentence—an action to recover the amount claimed in a claim of lien or an action on the claim asserted in the claim of lien—require a judgment upon the lien. DBM argues that the sentence presents two scenarios where the bond guarantees payment: (1) where there is a judgment upon the lien in favor of the lien claimant or (2) where there is a judgment on the claim asserted in the claim of lien. DBM claims that this case is an example of the second situation and that this sentence means that its judgment only on the underlying contract action (the claim asserted in the claim of lien) obligates Travelers to pay on the lien bond.

¶7 RCW 60.04.161 is certainly not a model of clarity, and it may warrant legislative attention to clarify the meaning of the statute. But we conclude that Travelers' interpretation is the correct one because it is consistent with the

grammatical construction of the sentence. The sentence lists two types of actions after the word "entered," but the prerequisite event is a judgment *upon the lien*: "The condition of the bond shall be to guarantee payment of any judgment upon the lien in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien." RCW 60.04.161. The two alternatives listed in the second half of the sentence are then two types of actions that can result in judgments on a lien. It is not entirely clear why the legislature identified these two alternatives, but either alternative requires that the validity of the lien be adjudicated.

¶8 This result is required by the sentence structure within RCW 60.04.161 and is furthermore consistent with the purpose of mechanics' liens and lien bonds. While parties may contract with property owners for work related to the property and sue upon the breach of those service contracts, the legislature has identified only particular types of services that may support a mechanics' lien on the improvement to the property. *See* RCW 60.04.011, .021. Not all services that relate to property qualify for a lien, and a lien statute is strictly construed to determine whether the lien attaches. *Pac. Indus., Inc. v. Singh*, 120 Wn. App. 1, 6, 86 P.3d 778 (2003). Thus, the legislature intended to provide the benefit of a lien only to certain parties.

¶9 Once a lien claim has been filed, a property owner who disputes the correctness or validity of the lien but wishes to release the property from the lien to allow for free alienation of the property can record a bond in lieu of lien claim. RCW 60.04.161. The lien is then secured by the bond rather than the property, and the property can be sold without waiting for the lien foreclosure action to be completed. When the lien claimant does foreclose on the lien, the judgment is paid from the bond. *See Mountain Ranch Corp. v. Amalgam Enters., Inc.*, 143 P.3d 1065, 1068-69 (Colo. App. 2005), *cert. denied*, 2006 Colo. LEXIS 834; *Hutnick v. U.S. Fid. & Guar. Co.*, 47 Cal. 3d 456, 462-63, 763 P.2d 1326, 253 Cal. Rptr. 236 (1988).

¶10  DBM's interpretation of the lien bond statute severs the tie between the lien and the bond in that the lien itself need never be adjudicated, yet the surety is still obligated—as if the lien bond is the same as a judgment bond. But that defeats the purpose of a lien bond. The purpose of such a bond is to transfer the lien from the property to the bond to permit alienation of the property—it is not a concession that the lien is valid and correct. Soos Creek disputed the breach of contract claim on the basis that DBM performed unauthorized services and overcharged for nonengineering services, and most certainly did not concede that all the services performed by DBM would give rise to a lien. DBM's interpretation of the lien bond statute would obviate the need to ever adjudicate a lien because the lienholder would simply obtain a judgment on the claim that gave rise to the lien—but not all claims give rise to valid liens. DBM could and should have obtained a judgment upon the lien from the trial court in its action against Soos Creek, proving that the services provided were professional services that resulted in an improvement to the property as required by the mechanics' lien statute. RCW 60.04.021. No such judgment was ever obtained, and the failure to do so is fatal to DBM's claim against Travelers.

¶11  DBM argues that it was unnecessary to obtain a judgment upon the lien not only because the statute does not require it, but also because its contract with Soos Creek states that DBM would be providing professional services relating to the property, so the judgment for DBM on the breach of contract necessarily implies that the lien for professional services was valid. But not all professional services give rise to a lien—RCW 60.04.021 requires that professional services must result in an improvement to the property in order to give rise to a lien. The parties never litigated the lienability of DBM's services, so it is speculative whether the entire breach of contract judgment is based on services that would have supported a lien under RCW 60.04.021.

¶12  DBM also argues that it would have been impossible to foreclose on the lien once the bond had released it from

the property because there was no longer any lien to foreclose upon, but this argument is simply incorrect.[2] A lien bond does not eliminate a lien entirely. A lien bond releases the property from the lien, but the lien is then secured by the bond. *Hutnick*, 47 Cal. 3d at 463. While the applicable foreclosure process depends on whether the lien is secured by property (which can then be sold) or by a bond, in either situation, the lien must be foreclosed upon before the lienholder is entitled to recover on the lien. *Mountain Ranch*, 143 P.3d at 1068-69. So in order to be entitled to payment on the bond, DBM needed to foreclose its lien.[3] Because DBM did not obtain a judgment foreclosing its lien, Travelers is not obligated to pay on the lien bond.

### *Attorney Fees*

██ ¶13 Travelers requests appellate attorney fees and costs under RAP 18.1 and RCW 60.04.181. This statute permits the court to award reasonable attorney fees and costs to the prevailing party in an action to enforce a lien. Although Travelers prevailed in this appeal, this is not an action to enforce a lien. Travelers prevailed precisely be-

---

[2] This argument is not only incorrect, it is also undermined by DBM's trial brief in the Soos Creek litigation—which was filed after the bond had been recorded—in which DBM contended summarily that its lien was valid. Thus, DBM did not contend at trial against Soos Creek that the recording of the bond led to the complete release of the lien.

[3] In its brief, Travelers argues that in the event DBM should now attempt to enforce its lien, it is barred by res judicata, collateral estoppel, and the statute of limitations. DBM did not request foreclosure of the lien in its action against Travelers below or here—arguing that foreclosure is not necessary or even possible—so we need not address whether a future request would be barred.

Because both parties briefed the issue, however, we note that a future attempt by DBM to foreclose on the lien would be barred by res judicata. Res judicata prevents a party from raising claims in a second lawsuit based on the same transaction that were raised or should have been raised in the prior lawsuit. *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 891-92, 1 P.3d 587 (2000). DBM did raise a lien foreclosure claim in its action against Soos Creek but in effect abandoned this claim by not obtaining a judgment on the lien, so it would not be entitled to a second opportunity to pursue this claim. Because any attempt to adjudicate the lien at this point would be barred by res judicata, we need not address Travelers' arguments that the action would also be barred by collateral estoppel or the statute of limitations.

cause DBM did not foreclose its lien. Therefore, Travelers is not entitled to its attorney fees under RCW 60.04.181.

¶14  For the foregoing reasons, we reverse and dismiss.

APPELWICK, C.J., and ELLINGTON, J., concur.

Reconsideration denied December 19, 2007.

Review denied at 164 Wn.2d 1005 (2008).