# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

COLUMBIA STATE BANK, a Washington ) No. 70217-3-I
chartered bank, )
)
           Respondent, ) DIVISION ONE
)
           v. ) UNPUBLISHED OPINION
)
BRUCE JOHNSON CONTRACTOR LLC, )
a Washington limited liability company, ) FILED: November 24, 2014
)
           Appellant. )
_____ )

APPELWICK, J. — Johnson and Columbia Bank each held security interest in portions of a real estate development called Saratoga Passage. Columbia pursued nonjudicial foreclosure of Saratoga Passage and sought to have its interests declared superior to Johnson's. Pending the trial court's priority ruling, Columbia posted a lien release bond pursuant to RCW 60.04.161 to free the property from Johnson's claims of lien. Once Columbia established priority, it moved to release the bond. Johnson appeals the trial court's order releasing the bond. It argues that the bond extended to three Saratoga Passage subparcels in which it had security interest and Columbia did not. It asserts that the release of the bond was improper, because the release extinguished its lien interest in those subparcels without its judgment being satisfied. However, the trial court identified no subparcels in which Columbia did not have a superior interest. We affirm.

## FACTS

Victor and Linda Benson owned a residential plat in Skagit County on which they built a real estate development called Saratoga Passage View. Saratoga Passage was assembled from several previously existing lots and parcels totaling approximately 588

acres. The Bensons sought to create a subdivision comprised of 26 one acre single family residential sites with the remaining acreage left as open space.

From 2006 to 2009, the Bensons took out a series of real estate loans from Summit Bank totaling $4,175,799. To secure the loans, the Bensons granted Summit deeds of trust in the Saratoga Passage property. Summit recorded three deeds of trust, one each on December 28, 2006; March 11, 2008; and April 18, 2008.

In June 2009, the Bensons obtained final plat approval for the 26 lot subdivision. The Bensons started to sell the finished building lots, and Summit partially released its deeds of trust in connection with the lots that were sold. Summit subsequently recorded two modification deeds of trust to include an additional legal description of the property based on the 26 lot plat. In December 2009, the Bensons began to default on their loans from Summit.

In September 2010, the Bensons hired Bruce Johnson Contractor LLC (Johnson) as the completion contractor on Saratoga Passage. Johnson was charged with maintaining and inspecting the storm water systems, domestic water systems, unsold lots, and common areas. Johnson was also responsible for final completion of site features.

In May 2011, Columbia State Bank acquired certain Summit Bank assets, including the Bensons' loans and deeds of trust. Columbia elected to foreclose on the Bensons' loans and deeds of trust in September and October 2011.

On October 12, 2011, Johnson filed a claim of lien against the Bensons' unsold subdivision lots: lots 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, 18, 19, 20, 25, and 26. Johnson

subsequently amended his claim of lien on January 19, 2012 and March 7, 2012 to reflect additional work performed.

On February 28, 2012, Johnson sued the Bensons for breach of contract and lien foreclosure. On June 28, 2012, the court entered a judgment by confession against the Bensons in the amount of $89,867. The judgment established that Johnson's date of priority was September 21, 2010 and its lien foreclosure interest was superior to the Bensons' ownership interests. On July 3, 2012, Johnson obtained a lien foreclosure judgment against the Bensons on the unsold lots.

Meanwhile, Columbia pursued nonjudicial foreclosure of the unsold lots and recorded a notice of trustee's sale on July 9, 2012.[1] Columbia discovered that Johnson's lien foreclosure judgment was a cloud on the title to the unsold lots. On August 2, 2012, Columbia sought a judgment declaring its deeds of trust prior and superior to Johnson's liens. Columbia asserted interest in all the unsold lots, including lot 26.

In the meantime, Columbia moved for entry of a bond to "obtain a release of the lien alleged by Johnson on real property owned by the Bensons." Columbia's motion stated that "until the lien priority issue is decided, [Columbia] seeks to discharge the property from the alleged Johnson lien by substituting the bond in its place." Columbia asserted that this would allow it to "obtain title insurance for the nonjudicial foreclosure before the lien priority issue is decided."

On August 23, 2012, the parties stipulated to an order approving bond in lieu of claim under RCW 60.04.161. The order approved Columbia's "bond to release the lien

---

[1] The trustee's sale was originally scheduled for October 26, 2012. It was continued to February 22, 2013. A trustee's deed filed March 18, 2013 shows that lots 1, 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, 18, 19, 20, 25, and portions of Lot 26 were sold.

alleged by [Johnson] on certain real property owned by [the Bensons] as described in Johnson's claim of lien and amended claim of lien." Per the statute, the amount of the bond was $134,801, one and one-half times the amount of Johnson's judgment by confession against the Bensons. The order provided that, upon filing of the bond, the property described in Johnson's claims of lien was released from "any and all liens claimed by Johnson." Columbia filed the bond on September 13, 2012.

On October 1, 2012, Columbia moved for summary judgment declaring its interests in the unsold lots, including lot 26, prior and superior to Johnson's. Johnson opposed summary judgment. It asserted that Columbia held no security in three subparcels within lot 26 where Johnson performed work.[2] In its reply, Columbia argued that it had a valid security interest in the property and was entitled to judgment declaring its interests in all the unsold lots prior and superior to Johnson's. The court granted summary judgment on October 30, 2012. It held that "[a]ny and all rights of Columbia State Bank under its Deeds of Trust and Modifications . . . are prior and superior to any and all rights claimed by Johnson in its Claim of Lien."[3] Johnson did not appeal this decision.

On December 13, 2012, Columbia moved to release the bond. It noted that it "posted the Bond in order to discharge the Benson property from Johnson's alleged liens by substituting the Bond in place of the property." Columbia asserted that release was proper, because Columbia had established priority over Johnson's liens. Thus, Columbia

---

[2] The three subparcels correspond to the four parcel numbers Johnson designated for lot 26 in his claims of lien: P95857, P130585, P16579, and P99837. Columbia's deeds of trust designated two of these four parcel numbers: P16579 and P99837.

[3] This included any and all subsequent liens claimed by Johnson.

4

argued, "there is no basis for Johnson to assert an interest in the Benson property against which he may recover on the Bond."

Johnson opposed the motion, again asserting interest in the three subparcels within lot 26 that it alleged were not subject to Columbia's deeds of trust. Johnson argued that the order granting summary judgment did not determine which property was subject to Columbia's security interests. It further alleged that the bond's scope was not limited to property subject to Columbia's deeds of trust. Rather, it asserted, the bond encompassed any and all land subject to Johnson's lien foreclosure judgment.

The court granted Columbia's motion to discharge the bond, finding that "there is no longer need for such surety bond." It ordered that the bond be discharged in its full amount and that any and all of Columbia's obligations and surety thereunder be immediately cancelled.

Johnson appeals the order releasing the bond.

## STANDARD OF REVIEW

We review de novo all rulings made in conjunction with a summary judgment motion. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

## DISCUSSION

### I.   Order Releasing Bond in Lieu of Claim

Johnson argues that the trial court erred in releasing the bond in lieu of claim. Johnson alleges that it had security interest in three subparcels within lot 26 that were not subject to Columbia's deeds of trusts. According to Johnson, the bond Columbia posted secured its interest in those three subparcels. Thus, Johnson asserts, the bond release improperly extinguished its security in the subparcels.

5

Under RCW 60.04.161, any owner of real property subject to a recorded lien claim, or contractor, subcontractor, lender, or lien claimant who disputes the correctness or validity of the lien claim may record a lien release bond. The purpose of the bond is to allow the party posting the bond to free up the property for conveyance. Olson Engineering, Inc. v. KeyBank Nat'l Ass'n, 171 Wn. App. 57, 66, 286 P.3d 390 (2012). When a lien release bond is posted, it releases the underlying property from both the lien and any action brought to recover the claimed amount. RCW 60.04.161; Stonewood Design, Inc. v. Heritage Homes, Inc., 165 Wn. App. 720, 723, 269 P.3d 297 (2011). "The condition of the bond shall be to guarantee payment of any judgment upon the lien in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien." RCW 60.04.161. Said another way, a bond in lieu of claim stands as substitute collateral in place of the underlying property. See RCW 60.04.161.

Johnson asserts that the bond secured all of its lien claims against the property and was not limited to land covered by Columbia's deeds of trust. According to Johnson, the plain language of RCW 60.04.161 dictates that a lien release bond guarantees payment of "'any judgment'" on the lien, including his lien foreclosure judgment against the Bensons. (Emphasis added) (quoting RCW 60.04.161). Columbia contends that this language "cannot mean literally any judgment, but must refer to a judgment against the party who bonded around the lien." In other words, Columbia reads the statute more narrowly and asserts that the bond extended only to property in which it had interest.

When interpreting a statute, we look first to its plain language. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 498, 210 P.3d 308 (2009). If a

6

statute is susceptible to more than one reasonable interpretation, then we may resort to statutory construction, legislative history, and relevant case law to discern legislative intent. Id. However, we presume that the legislature does not intend absurd results and, where possible, we interpret ambiguous language to avoid such absurdity. State v. Ervin, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010).

RCW 60.04.161 provides that a lien release bond guarantees payment of "any judgment upon the lien in favor of the lien claimant entered in any action to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien." Johnson asserts that, under the statute's plain language, Columbia's bond extended to its judgment against the Bensons. In a vacuum, the plain language of the statute supports Johnson's position. Applied here, however, it would lead to an absurd result.

The purpose of a lien release bond under RCW 60.04.161 is to transfer the lien from the property to the bond to permit alienation of the property. Olson, 171 Wn. App. at 66; DBM Consulting Engineers, Inc. v. U.S. Fid. & Guar. Co., 142 Wn. App. 35, 41, 170 P.3d 592 (2007). This allows the party supplying the bond to free up the property for conveyance. CalPortland Co. v. LevelOne Concrete LLC, 180 Wn. App. 379, 386-87, 321 P.3d 1261 (2014). To recover on a bond in lieu of claim, the claimant must demonstrate the lien's validity and enforceability. Stonewood, 165 Wn. App. at 725; DBM, 142 Wn. App. at 41. The claimant must also show that the lien has priority over other encumbrances. McAndrews Grp., Ltd. v. Ehmke, 121 Wn. App. 759, 763, 90 P.3d 1123 (2004).

For example, in DBM, the lien claimant was unable to recover on a lien release bond, because it did not obtain a judgment on the lien. 142 Wn. App. at 37, 41. DBM recorded a lien against a client's property to secure a debt the client owed. Id. at 37. The client posted a bond so it could sell the property. Id. DBM sued the client for breach of contract and prevailed at trial. Id. However, it did not obtain a judgment on the lien. Id. Thus, the court found that DBM could not recover on the bond. Id. The court stated that "[t]he purpose of such a bond is to transfer the lien from the property to the bond to permit alienation of the property—it is not a concession that the lien is valid and correct." Id. at 41.

Unlike the firm in DBM, Johnson obtained a judgment on its lien. But, the analysis is still informative. Johnson's lien was not adjudicated—it obtained a judgment by confession against the Bensons, the third party with whom it had the contract. And, Johnson did not join Columbia, who had the superior interest in the property. As a result, Johnson's lien foreclosure judgment had no effect on Columbia's interests. RCW 60.04.171 ("The interest in the real property of any person who, prior to the commencement of the action, has a recorded interest in the property, or any part thereof, shall not be foreclosed or affected unless they are joined as a party."). Nor did the confession of judgment affect priority between Columbia and Johnson. Cook v. Nat'l Indem. Co., 47 Wn. App. 110, 113, 733 P.2d 1002 (1987) ("[A] claimant [does not gain] priority over a higher priority claimant simply by reducing his claim to judgment first.").

The only adjudicated judgment concerning Johnson's liens—the order granting summary judgment—provides that Johnson's lien claims are junior to Columbia's deeds of trust. The summary judgment made no exception for the three subparcels within lot 26

8

in which Johnson claimed Columbia had no interest. Johnson does not challenge the order granting summary judgment. It obtained no judgment against Columbia declaring its interest in any portion of lot 26 superior to Columbia's. Neither Johnson's judgment nor its lien claim is enforceable against Columbia's interest in the real property. Nonetheless, Johnson asks us to construe the statute so as to enforce the judgment and the lien claim against the bond, which Columbia posted as a substitute for its interest in the real property. See RCW 60.04.161. This would provide Johnson with an unfair windfall. The statute does not require such an absurd result.

Johnson further asserts that the bond defines its scope, and here it encompassed the entirety of Johnson's lien claim. Specifically, Johnson argues that the bond extends to its security interest in the three subparcels within lot 26 that Johnson maintains are not subject to Columbia's deeds of trust. It asserts that the bond extinguished that security interest and that it was unfair to release the bond without compensation for the extinguished interest.

Columbia initially disputed Johnson's assertion that it had no interest in the three subparcels. However, Columbia's counsel conceded at oral argument that the three subparcels were not part of Columbia's security interests or foreclosure.[4] Columbia maintains that release of the bond was still appropriate, because the bond released only Johnson's liens on property in which Columbia claimed superior title.

---

[4] The portions of lot 26 sold in the trustee's sale do not include the three subparcels.

9

We agree. The bond served as substitute collateral so that Columbia could alienate the underlying property. See RCW 60.04.161. Columbia could not alienate property in which it had no interest. Thus, if Johnson in fact had a lien on property in which Columbia had no interest, the bond did not release the lien on that property. However, the order on summary judgment did not identify any subparcels not subject to Columbia's interest. That judgment was not appealed and is final. Whether that order may be clarified on this matter is up to the trial court.

We find that the bond in lieu of claim substituted for Columbia's property interests and released only Johnson's claims of lien attached to that property. The summary judgment determined Columbia's interests were superior to Johnson's claim of lien. It did not identify any subparcels within lot 26 in which Columbia did not have a superior interest. Therefore, Johnson had no remaining claim against Columbia's bond. The trial court did not err in ordering the release of the bond.

II. Attorney Fees

Each party requests attorney fees as the prevailing party pursuant to RCW 60.04.181. RCW 60.04.181 provides, in pertinent part:

> (3) The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable. Such costs shall have the priority of the class of lien to which they are related, as established by subsection (1) of this section.

The prevailing party in the action may recover fees. See, e.g., Scott's Excavating Vancouver, LLC v. Winlock Props., LLC, 176 Wn. App. 335, 349, 308 P.3d 791 (2013); Zervas Grp. Architects, PS v. Bay View Tower, LLC, 161 Wn. App. 322, 329, 254 P.3d

10

895 (2011). As Columbia is the prevailing party, we grant its request, subject to compliance with RAP 18.1(d).

The trial court did not err in ordering the bond release. We affirm.

_Appelwick, J._

WE CONCUR:

_Spearman, C.J._                    _Lau, J._