**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 18 2019
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on JAN 18 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| INLAND EMPIRE DRY WALL SUPPLY CO., a Washington corporation, | ) ) ) | No. 94118-1 |
| Respondent, | ) ) ) | |
| v. | ) ) | En Banc |
| WESTERN SURETY COMPANY (Bond No. 58717161), | ) ) ) ) | |
| Petitioner. | ) ) | |
| | ) | Filed   JAN 18 2018 |

JOHNSON, J.—This case involves the issue of whether the purchaser of a lien release bond is an indispensable party in an action under chapter 60.04 RCW by a lien claimant against the surety of the release bond. The Court of Appeals, in a divided opinion, reversed the trial court's grant of summary judgment in favor of the surety and held that a claim against a lien release bond could be pursued solely against the surety. We affirm.

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

FACTS AND PROCEDURAL HISTORY

Inland Empire Dry Wall Supply Company is a supplier of drywall materials. Inland Empire entered into an agreement to supply drywall materials to Eastern Washington Drywall & Paint (EWD&P). EWD&P contracted with Fowler General Construction to work on an apartment complex project in Richland, Washington. Inland Empire claims to have supplied $124,653.05 worth of drywall for the apartment complex project work that EWD&P was performing.

Inland Empire claims EWD&P never paid it for the materials supplied. To pursue payment, Inland Empire filed a preclaim notice and timely recorded a mechanics' lien against the construction project under RCW 60.04.091. To release the project property from the lien, Fowler obtained a lien release bond in the amount of $186,979.57 from Western Surety Company. The lien release bond identifies Fowler as the "Principal," Western as the "Surety," and Inland Empire as the "Obligee." Clerk's Papers (CP) at 23. After Fowler recorded the lien release bond, Inland Empire filed an action asking for "judgment in the principle sum of $124,653.05" plus interest, costs, and attorney fees, and for "an order foreclosing [its] claim against Defendant Western Surety's Bond . . . and an Order directing the penal sum be paid to [it]." CP at 5, 6. The complaint named Western Surety—but not Fowler, the principal on the bond—as a party to the action. In its answer, Western raised several affirmative defenses, including the affirmative defense that

2

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

Inland Empire failed to name and include Fowler as a necessary and indispensable party, and that Inland Empire had not satisfied the statute of limitations under chapter 60.04 RCW. Inland Empire and Western then filed cross motions for summary judgment.

The trial court granted summary judgment in favor of Western. It ruled that under RCW 60.04.141, Inland Empire was required to sue and serve both Western as surety and Fowler as principal in the action to foreclose on a lien release bond. It reasoned that because the bond, rather than the apartment complex property, was now the property subject to the claim of lien, Fowler, as purchaser of the bond, together with Western became owners of the subject "property." The trial court therefore dismissed the lawsuit because Inland Empire failed to name and to serve Fowler as a party within the 90 days required under RCW 60.04.141.

Division Three of the Court of Appeals in a divided opinion reversed, the majority holding that RCW 60.04.161 controlled under these circumstances and that Inland Empire was only required to name Western, the bond surety, as the defendant to its bond foreclosure action. *Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*, 197 Wn. App. 510, 519, 389 P.3d 717, *review granted*, 188 Wn.2d 1002, 393 P.3d 785 (2017). Chief Judge Fearing dissented.

3

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

ANALYSIS

This case raises the issue of whether under chapter 60.04 RCW the purchaser of a lien release bond is an indispensable party who must be named and joined in an action on the lien release bond; this is an issue of statutory interpretation. Construction of a statute is a question of law that this court reviews de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). Where a "statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Such meaning "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question," and if the statute remains susceptible to more than one reasonable meaning, this court resorts to aids of construction, including legislative history. *Campbell & Gwinn*, 146 Wn.2d at 11, 12.

Chapter 60.04 RCW creates a cause of action for suppliers of labor, materials, or equipment to a construction project. The statute is often referred to as the "construction lien" statute. Before chapter 60.04 RCW was enacted, material and equipment providers and laborers were limited in pursuing unpaid claims under contract principles and generally could bring suit against only the purchaser of the materials or person (or entity) contracting for labor. In the absence of some

4

equitable or contractual theory, no claim existed against the property, property owner, or others. Construction lien statutes such as chapter 60.04 RCW were enacted to create a cause of action and remedy under certain circumstances in the construction industry. The enactment of chapter 60.04 RCW created a limited cause of action, allowing a claim to be filed against the property and property owner, so long as strict statutory time requirements were followed. As we have previously noted, the statute is construed liberally to protect persons who fall within its provisions. *See Williams v. Athletic Field, Inc.*, 172 Wn.2d 683, 696-97, 261 P.3d 109 (2011).

RCW 60.04.021 allows "any person furnishing labor, professional services, materials, or equipment for the improvement of real property" to place a lien on the construction project property as a method of securing payment for services rendered. A lien claimant, here Inland Empire, is required to give the property owner and the prime contractor written notice of the lien claim and to record the notice in the county where the subject property is located. RCW 60.04.031, .091. The statutory scheme includes strict time limits in which to act.

RCW 60.04.141 describes procedures a lien claimant must follow once the lien has been recorded. It provides, in relevant part:

> No lien created by this chapter binds the property subject to the lien
> for a longer period than eight calendar months after the claim of lien
> has been recorded unless an action is filed by the lien claimant within

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> that time in the superior court in the county where the subject property is located to enforce the lien, and service is made upon the owner of the subject property within ninety days of the date of filing the action . . . and in case the action is not prosecuted to judgment within two years after the commencement thereof, the court, in its discretion, may dismiss the action for want of prosecution, and the dismissal of the action or a judgment rendered thereon that no lien exists shall constitute a cancellation of the lien.

RCW 60.40.141. The statutory language makes it clear that RCW 60.04.141 requires "the owner of the subject property" to be named in actions where no release bond has been filed. This makes legal and practical sense: while the foreclosure suit seeks to enforce payment, if payment is not made, the property owner's interest in the property may be foreclosed, i.e., forfeited. Based on this potential remedy, the statute—RCW 60.04.141—requires joinder of the property owner. Failure to comply with these statutory provisions results in the loss by the lien claimant of the right to the lien. *See Bob Pearson Constr., Inc. v. First Cmty. Bank*, 111 Wn. App. 174, 179, 43 P.3d 1261 (2002). The type of action created under RCW 60.04.141 is a quasi in rem type of action where the object, or res, is the real property.

RCW 60.04.161 authorizes a property owner or contractor, subcontractor, lender, or lien claimant who disputes the correctness or validity of the claim of lien to post a lien release bond. The real property then is released from the claim and becomes unreachable, and the bond purchaser instead posts the bond as security.

6

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

The purpose of the lien release bond is twofold. First, the bond protects the property owner by removing the lien from the real property, thus providing the owner with clear marketable title. Second, the bond "protects the lien claimant by taking the place of the property and serving as a form of substitute security should the lien claimant ultimately prevail." THE LAW OF MISCELLANEOUS AND COMMERCIAL SURETY BONDS 155 (Todd C. Kazlow & Bruce C. King eds., 2001); *see also CalPortland Co. v. LevelOne Concrete, LLC*, 180 Wn. App. 379, 387, 321 P.3d 1261 (2014). Fowler, the general contractor on the project here, obtained a lien release bond to free up the construction project property. As the Court of Appeals correctly recognized, "Once a lien release bond is recorded, the procedural statute shifts from RCW 60.04.141 to RCW 60.04.161." *Inland Empire*, 197 Wn. App. at 516. Unlike RCW 60.04.141, the language of RCW 60.04.161 refers to the liability of the surety and does not mention either the bond purchaser or property owner in that context. RCW 60.04.161, of course, necessarily refers to the owner of the property as one of several entities that may dispute a lien and record a bond. But aside from that reference, it simply states that "[t]he condition of the bond shall be to guarantee payment of any judgment upon the lien in favor of the lien claimant entered in *any action* to recover the amount claimed in a claim of lien, or on the claim asserted in the claim of lien." RCW 60.04.161 (emphasis added). It further provides:

7

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

> *The effect of recording a bond shall be to release the real property* described in the notice of claim of lien from the lien and any action brought to recover the amount claimed. Unless otherwise prohibited by law, if no action is commenced to recover on a lien *within the time* specified in RCW 60.04.141, the surety shall be discharged from liability under the bond. If *an action* is timely commenced, then on payment of any judgment entered in *the action* or on payment of the full amount of the bond to the holder of the judgment, whichever is less, the surety shall be discharged from liability under the bond.

RCW 60.04.161 (emphasis added). The real property owner and the real property subject to the claim of lien are no longer subject to the claim. The bond becomes the only available source for the lien claimant to turn to in seeking to collect the amount owed, and the bond purchaser under RCW 60.04.161 therefore need not be treated the same way as the property owner under RCW 60.04.141. Nothing in the statute suggests that the bond purchaser gets the bond back if the claim fails for any reason. The Court of Appeals majority correctly recognized that

> [t]his substitution of the "surety" in RCW 60.04.161 for the "owner of the subject property," as used in RCW 60.04.141, indicates the legislature's plain intent that when a lien release bond is filed, the surety shall be substituted for the property owner as the entity that must be sued to recover on a lien.

*Inland Empire*, 197 Wn. App. at 516-17.

Western argues that suing only the surety on a release bond does not satisfy RCW 60.04.161 and RCW 60.04.141's procedural requirements "because a surety's liability is fully conditional and not triggered and absolute until the lien claimant successfully litigates with the principal to establish the disputed lien's

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

correctness and validity." Pet. for Review at 10. The statutory language Western relies on does not expressly state against whom the action to foreclose on the lien must be brought.

The main premise of Western's argument is that until the validity of the lien claim has been adjudicated as between the principal and the lien claimant, no obligation exists on its part to pay. It is true that the lien claimant must prove the validity and the right to recover the claimed amount, whether its claim is against the property and its owner or the bond. But that does not answer the question of who must be named as a party. That issue is resolved by looking at the statutory provisions. To that end, nothing in the language of RCW 60.04.161 stating that "*any* judgment upon the lien in favor of the lien claimant entered in *any* action to recover the amount claimed . . . or on the claim asserted in the claim of lien" requires that the lien claimant must first proceed against the principal. (Emphasis added.)

Western argues that the provisions of the lien release authorization of RCW 60.04.161 must be read in conjunction with the general provisions of RCW 60.04.141, which set forth the procedures for bringing an action to foreclose the original lien as against the real property. It maintains that the procedural requirements of RCW 60.04.141, and specifically the language that service is to be made on the "owner of the subject property," should be and have been interpreted

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

to require that both the principal and the surety be joined in the action to foreclose on the bond. But reading these provisions together does not support the result that Western wants. Western reads more into the statutory language than what is actually there.

While RCW 60.04.161 expressly states that the action to recover the amount claimed has to be commenced within the time specified in RCW 60.04.141, it does not transpose any other requirements contained in RCW 60.04.141 on the lien claimant seeking to commence an action on the bond. Instead, it states that unless an action to recover on a lien is timely commenced, the surety must be discharged from liability under the bond. It further states that if the action is timely commenced, then on payment of any judgment entered in that action or on payment of the full amount of the bond to the judgment holder, the surety's liability will be discharged. RCW 60.04.161.

As the Court of Appeals here noted, "Unlike RCW 60.04.141, RCW 60.04.161 makes no mention of the 'owner of the subject property' as an entity necessarily impacted by a suit." *Inland Empire*, 197 Wn. App. at 516. The only reference in RCW 60.04.161 to the owner of the property subject to a lien is in the context of identifying the owner as one of several entities permitted to dispute a lien and record a bond. RCW 60.04.161 does, however, explicitly refer to the surety and the conditions that would discharge its obligations, which evinces a

10

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

legislative choice to treat the surety's rights and obligations distinct from those of the other parties.

To complete the statutory picture, RCW 60.04.171 provides that "[i]n any action brought to foreclose a lien, the owner shall be joined as a party." Western, as well as Judge Fearing in his dissent, relied on this language to construe the statutory framework and the legislative intent to require that the lien claimant in an action to recover on the bond is required to join the principal as the "owner" of the bond. Tellingly, RCW 60.04.171 also states that "[t]he court shall have the power to order the sale of the property," which renders any reliance on this provision to equate Fowler to the owner of the subject property unconvincing.

The concept of an "owner" in a two party, owner-versus-lien-claimant relationship is not easily transposed to a situation where general suretyship law principles provide that a bond lien claimant, here Inland Empire, "has two sets of rights, one set against the principal," here Western, "and the other against the secondary obligor," here Fowler. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 50 cmt. (AM. LAW INST. 1996). Further, "[a] suretyship relationship is a three-party relationship between surety, principal, and obligee [, and] the surety undertakes to answer for the debt or default of the principal." RICHARD E. TASKER ET AL., PRACTICAL GUIDE TO CONSTRUCTION CONTRACT SURETY CLAIMS 9 (1997). The legislature does not impose the constraints of a rather straightforward,

11

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

two party relationship between a real estate owner and lien claimant on parties whose relationship originates from and is generally undertaken under the law of suretyship.

A similar situation was analyzed in *CalPortland*, 180 Wn. App. 379. In that case, the Court of Appeals determined that a real property owner is not a necessary party to a suit against a lien release bond. In *CalPortland*, a general contractor recorded a lien release bond after a building materials provider recorded a claim of lien against the construction property but before the provider filed suit. When the provider, as a lien claimant, thereafter sued on the lien, it named the general contractor and the surety among various defendants but did not name the real property owner as parties. The Court of Appeals held that the trial court erred in granting summary judgment in favor of the general contractor and stated that including the bond principal and surety is "sufficient" in an action on a release bond. But the Court of Appeals in *CalPortland* did not hold that the bond purchaser was a necessary party that had to be joined.

Western contends its position is supported by Division One's decision in *DBM Consulting Engineers, Inc. v. United States Fidelity & Guaranty Co.*, 142 Wn. App. 35, 170 P.3d 592 (2007). There, the lien claimant, DBM, recorded a mechanics' lien against a client's property to secure a debt owed. Subsequently, the client recorded a lien release bond. In the action alleging breach of contract,

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

unjust enrichment, and foreclosure of the mechanics' lien, DBM failed to ask for judgment on the lien foreclosure claim and no judgment was entered as to that claim. When DBM demanded that the surety pay the entire bond amount as partial satisfaction of the judgment, the surety refused, citing DBM's failure to foreclose on the lien. Division One noted that RCW 60.04.161 was not a model of clarity. It interpreted RCW 60.04.161 to require judgment against the bond. The *DBM* court concluded that because DBM did not obtain a judgment foreclosing its lien, the surety was not obligated to pay on the lien bond.

*DBM* does not establish a requirement that a lien claimant seeking to foreclose on the lien cannot proceed against the surety, here Western, to do so. The facts and procedure differ. In *DBM*, the lien claimant initially filed suit against the property owner *before* the property owner filed a lien release bond. DBM could have, and likely should have, amended its pleadings and sought to foreclose on the lien secured by the bond. It did not do so. Unlike in *CalPortland* and here, no claim was asserted against the bond or the surety at the time the lawsuit was commenced. *DBM* does not impact the statutory analysis here.

Western also cites to *Olson Engineering, Inc. v. KeyBank National Ass'n*, 171 Wn. App. 57, 286 P.3d 390 (2012), for the proposition that "Washington's construction lien foreclosure statutes control suits on lien release bonds because the bond claimant must still prove the validity and correctness of its lien." Suppl. Br.

13

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

of Pet'r at 12. The primary issue before the court in *Olson* was whether RCW 60.04.161 prevents a trial court from adjudicating the parties' lien priorities when one party files a release-of-lien bond. *Olson*, 171 Wn. App. at 63. In reaching the conclusion that RCW 60.04.161 does allow a trial court to adjudicate the parties' lien priorities after the filing of such a bond, the Court of Appeals concluded that "[t]he plain language of the statute . . . implies that to be entitled to the proceeds of the lien release bond, the lien claimant must obtain a favorable judgment on the lien." *Olson*, 171 Wn. App. at 66. Relying on this interpretation, the court also went on to review the trial court's grant of summary judgment as to the validity of the lien at issue. This reading of the statutory language by the court in *Olson* is consistent with our conclusion here that the statutory language allows this determination of validity to be made in an action brought against the surety without naming and joining the principal in the action.

Here, Inland Empire filed its lawsuit in the trial court after Fowler, the general contractor, had already posted the release bond, and in its complaint sought "judgment in the principle sum of $124,653.05" as well as "an order foreclosing Plaintiff's claim against Defendant Western Surety's Bond No. 58717161 and an Order directing the penal sum be paid to Plaintiff to satisfy the principal, interest and costs incurred in prosecuting this claim." CP at 5, 6. Inland Empire and Western appear to agree that Inland Empire cannot obtain a judgment on the lien

14

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

and foreclose against the bond without first litigating the validity of the lien and correctness of the amount due and owed. The disagreement lies, rather, in that Western believes that determination requires Inland Empire to name and join Fowler, the general contractor who purchased the lien release bond from Western, as a necessary party. Inland Empire, on the other hand, argues that litigating the validity and correctness of the lien, although prerequisite to obtaining a judgment and foreclosing against the bond, can occur in the same action brought by the lien claimant obligee against the surety.

Western appears to conflate two unrelated statutory requirements by arguing that because the validity of the lien must be determined first, the lien claimant obligee has to do so in an action against the principal before it can bind the surety and trigger its obligations, yet the remedy that it seeks before this court is compulsory joinder of the principal in what is essentially the same action. The analysis of the statutory language and the case law discussed *supra* does not support Western's proposition.

First, as previously stated, nothing in the statute or the case law discussed above suggests that the surety is precluded from challenging and litigating the validity or amount of the lien. RCW 60.04.161 functions to allow a substitution of the bond for the real estate, replacing the res to which the lien attaches. But aside from the requirements of the timing of the action of RCW 60.04.141, it does not

15

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

impose any requirements on the lien claimant such that it would have to litigate against both the principal and the surety. Nothing in the statute or our case law prevents the surety from asserting the same claims or defenses as the principal on the bond, and nothing prevents the surety from impleading the principal or from seeking its assistance.[1] Counsel for the petitioner appears to have recognized as much at oral argument, agreeing that substantively, nobody's rights or obligations differ depending on who is named. Wash. Supreme Court oral argument, *Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*, No. 94118-1 (Sept. 28, 2017), at 8 min., 11 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

Importantly, RCW 60.04.161 authorizes not only property owners but also contractors, subcontractors, lenders, or other lien claimants to obtain and record a lien release bond. Inland Empire points out that lien claimants, such as itself, may have no contractual or other basis for obtaining a judgment against these potential principals. In this instance, Inland Empire recorded a lien against the real property project in question on the basis of EWD&P's alleged nonpayment, not Fowler's. The statutory lien claim against the property (and now the bond) is the only claim that can be successfully pursued, and in cases of unavailability or insolvency of the

---

[1] Sureties, as well as bond purchasers, can likewise seek indemnification.

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

original debtor, chapter 60.04 RCW operates to establish the only feasible legal basis for recovery for lien claimants like Inland Empire. While including Fowler as the principal on the bond it obtained to free up the apartment complex project would have been feasible, joinder is not a statutory prerequisite.

Western cites to case law from Virginia in support of the proposition that a surety should be considered a necessary and indispensable party in Washington, focusing on *Synchronized Construction Services, Inc. v. Prav Lodging, LLC*, 288 Va. 356, 764 S.E.2d 61 (2014), and *Johnson Controls, Inc. v. Norair Engineering Corp.*, 86 Va. Cir. 138 (2013). While those cases do suggest that in Virginia, both the principal and the surety are necessary parties in a lien foreclosure action, they rely on and stem from the statutory language of the Virginia mechanics' lien statute. Va. Code Ann. § 43-71 explicitly states that "[t]he sureties on any [lien release] bond, which may be involved in any suit or action brought under the provisions of this section, shall be made parties to such suit or action." The Virginia statutory provision differs from RCW 60.04.161 and is not helpful here.[2]

---

[2] It is noteworthy that in Oregon, where the lien release statute directs lien claimants to proceed against the principal on the bond, sureties have also argued a surety is an indispensable party in an action to foreclose the underlying lien. *See, e.g., Valencich v. TMT Homes of Or., Inc.*, 193 Or. App. 47, 88 P.3d 300 (2004) (rejecting a surety's argument that had it been made a party, it would have been able to contest the validity of the underlying liens).

17

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

Western also cites to statutory provisions out of Arizona (ARIZ. REV. STAT. § 33-1004(C), (D)), New York (N.Y. LIEN LAW § 37(7)), Oklahoma (OKLA. STAT. tit. 42, § 147.1) and Nevada (NEV. REV. STAT. § 108.2421(2)(b)) for the proposition that "general suretyship law principles can be superseded and rendered inapplicable by contrary statutory requirements or other authority." Suppl. Br. of Pet'r at 14. Western is correct that lien statutes are viewed by most courts to be in derogation of common law. *See, e.g.*, THE LAW OF MISCELLANEOUS AND COMMERCIAL SURETY BONDS, *supra*, at 158. In applying this principle, we analyze our statute in accordance with the general guiding principles of statutory construction. We cannot ignore or add to the language of RCW 60.04.161. The statute defines a "payment bond"[3] to mean "a surety bond issued by a surety licensed to issue surety bonds in the state of Washington that confers upon potential claimants the rights of third party beneficiaries," RCW 60.04.011(10), and further provides that the terms be liberally construed. RCW 60.04.900.[4] Although the type of bond at issue is a lien release bond, the rule of liberal

---

[3] A "payment bond" is an agreement in which the surety assures the obligee that the suppliers of labor, material, and rental equipment to the project will be paid by the principal. TASKER, *supra*, at 44.

[4] RCW 60.04.900 provides that "RCW 19.27.095, 60.04.230, and 60.04.011 through 60.04.226 and 60.04.261 are to be liberally construed to provide security for all parties intended to be protected by their provisions."

18

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

construction applies[5] and is a directive to construe the language of RCW

60.04.011(10) and RCW 60.04.161 in favor of the claimant in the event any

question of statutory meaning existed.

In following this directive, the Court of Appeals has relied on a California

Supreme Court decision in *Hutnick v. United States Fidelity & Guaranty Co.*, 47

Cal. 3d 456, 763 P.2d 1326 (1988). In *Hutnick*, the California State Supreme Court

concluded that "[i]f only the surety is joined, the resulting judgment will be

binding on the principal, provided only that the surety has given notice to the

principal 'and an opportunity at the surety's request to join in the defense.'" 47

Cal. 3d at 469 (quoting CAL. CIV. PROC. § 1912). The court noted that "[a]

principal notified of the action by the surety will have the same motivation to

defend the action as if formally named as a party, because the judgment will be

equally conclusive as a determination of the principal's liability" and that "the

surety has the means to call upon the principal to defend the lien foreclosure

action." *Hutnick*, 47 Cal. 3d at 469.

This reasoning is persuasive both from a practical standpoint and from the

standpoint of general suretyship principles that confer third party beneficiary rights

on lien claimants in Washington. As previously noted, nothing in the language of

---

[5] *See Williams*, 172 Wn.2d at 696-97.

19

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

RCW 60.04.161 or our case law interpreting it prevents the surety from impleading the principal or from seeking its assistance or bringing a third party claim.

Western next argues that the general principles of suretyship law should be inapplicable here because attempting to foreclose on a lien release bond against only the surety is illogical or impractical. Western insists that we should look only to the statute in resolving the dispute. While Western's observation that statutory language should control is correct, nothing in our interpretation of the statute runs afoul of the statute's language or renders the foreclosure process illogical or impractical.

RCW 60.04.161 operates similarly to a situation where, for example, someone guarantees a debt. In such a situation a lawsuit can properly be pursued against the guarantor; the debtor need not be made a party. Surety bonds are underwritten based on the principal's creditworthiness and ability to perform, and the principal may be obligated to repay the surety for any losses incurred. TASKER, *supra*, at 9. The "contract of suretyship is one to answer for the debt, default, or miscarriage of another." *Meyer v. Bldg. & Realty Serv. Co.*, 209 Ind. 125, 196 N.E. 250, 254 (1935). "[D]espite a surety's contract being collateral to a valid principal obligation contracted by another, a contract of a surety involves a direct promise to perform the obligations of another person. In other words, the surety is primarily

20

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

and jointly bound with the principal." 74 AM. JUR. 2d Suretyship § 1 (2017 Supp.) (footnote omitted).

While not interpreting chapter 60.04 RCW, we have held that an obligee named in a surety bond containing joint and several promises has a right to sue the surety alone without joining the principals in the action, where a breach has occurred. *Kampendonk v. Am. Bonding Co. of Baltimore*, 6 Wn.2d 312, 318, 107 P.2d 588 (1940); *see also Kanters v. Kotick*, 102 Wash. 523, 526, 173 P. 329 (1918). This is consistent with the general suretyship law principle that the obligee has two sets of rights: one against the principal obligor and the other against the secondary obligor. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 50 cmt. (1996); *see also* LAURENCE P. SIMPSON, SIMPSON ON SURETYSHIP 9 (1950) (a surety's obligation to pay for another's debt not conditioned on another's default). The record does not reveal whether the bond in question contemplated that the parties would be jointly and severally liable, and neither does the bond's boilerplate language, but that does not change the statutory language.

In similar cases, a payment bond claimant may bring suit solely against the surety and not against the principal on the bond, often "because the principal is bankrupt, insolvent, defunct, beyond the reach of judicial process, or not otherwise capable of satisfying the debt owed to the claimant." THE LAW OF PAYMENT BONDS 894 (Kevin L. Lybeck et al. eds., 2d ed. 2011). "[S]ureties have sometimes argued

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that the claimant is obligated to bring suit against both the surety and the principal in the same action," and the majority of the courts relying on general suretyship law principles have rejected this argument. THE LAW OF PAYMENT BONDS, *supra*, at 895. In the present case, although the bond in question is not a payment bond but a lien release bond, similar considerations inform lien claimants' decisions to bring suit solely against the surety. We interpret the statutory language while mindful of the practical considerations of the parties whose interests the statute protects.

### ATTORNEY FEES

Both parties request an award of attorney fees and costs pursuant to RCW 60.04.181(3) and RAP 18.1. Pursuant to RAP 18.1(i) and RCW 60.04.181(3), if on remand the trial court determines Inland Empire to be the prevailing party in the lien foreclosure action and upon submission of satisfactory proof of the claimed amount due, judgment against the bond should be entered. Reasonable attorney fees and expenses, including statutory fees and costs on appeal, are also recoverable.

*Inland Empire Dry Wall Supply Co. v. Western Surety Co.*, No. 94118-1

CONCLUSION

We affirm the Court of Appeals and remand the case to the trial court for further proceedings.

WE CONCUR: